Good morning, your honors. If it may please the court, as a preliminary matter, I'd like to reserve three minutes for rebuttal. I will watch the clock. This is a case about government transparency and the ability of individuals to believe they were disenfranchised due to an unfair hiring process to gain basic information about their scores in the exam and what happened. It's a high profile case. It garnered lots of media attention. It garnered lots of congressional attention. Mr. Rojas was involved in a collegiate training institution program established by the FAA to train air traffic controllers. Approximately 36 universities across the country had these. He was enrolled and paid tuition. And under the agreement with the FAA, candidates had successfully passed the CTI program, passed an aptitude test called the ATSAT at that time, a peer reviewed aptitude test that had been in use for many years. And the studies had been previously published to show it was a valid test. If they could pass a physical and some other OPM regulations that government employees, certainly air traffic controllers, have to pass in order to work as an air traffic controller, they were given a preferential slot, preferential hiring. So your client's reasons for requesting the information isn't really relevant to us, right? We're directed that the reasons for the request are irrelevant and we're only trying to see whether the public would be interested in this information. I agree with that. I'm setting a backdrop for what occurred. But I would agree with that assertion. Well, I think we're familiar with the facts of the case. Thank you, Your Honor. Three basic issues on review. The first one is Mr. Rojas entitled to obtain under the FOIA or Privacy Act his score that he achieved on the biographical assessment, which was the new examination that the FAA put in as a screening tool prior to the candidates taking the aptitude test. And our assertion, of course, is that since he asked for his score and a raw cutoff score, that he should have been able to obtain his score, his raw score on the exam. Mr. Rojas took the exam. He did not pass. He then subsequently sent the FOIA to the FAA asking for the scores. Well, it seems like the agency's hiring decisions is certainly part of their personnel practices and how they examine applicants and their determination on that. So the opposing counsel argues that this is squarely within Exemption 2 and within the Privacy Act's coverage of testing or examination material, and they rely on the affidavit from, I think, Ricky Cannon was the... Yes, Your Honor. Affiant. So why isn't that correct? It certainly seems like testing results is core personnel material. Well, the material is the information used, at least as defined in the dictionary, to actually form the test, the testing material, the studies, potentially information from different experts put together to actually make the test, the test itself with the questions for the test. He's simply asking for a raw score. The raw score is the results of the test materials. He's not asking for test materials itself. He's asking for a score. So the reason that under the Privacy Act, I think, which we need to address first, because if it is, if Privacy Act Exemption K-6 does not apply, Mr. Rojas under the Privacy Act is entitled, I believe, to those records since they're about him. He didn't ask for thousands of records. He didn't ask for everyone's score. He asked for his own. So the affidavit, and I guess there was some other evidence in the record also, indicates that individuals who took the test were aggregating all the information, and from the aggregation of that information, it would be possible to come up with a cheat sheet as to what the correct answers are. Well, I believe that that's faulty on numerous counts. Number one, it's unsupported, but number two, it would require hundreds of... It's not unsupported, right? There was an affidavit in the record and other evidence as well. There was a Google document saying, here, everybody, give us your answers and we can figure out what the right answers are. I'm talking about being able to cobble... Well, there's nothing illogical about it, though. This is a take-home test. People do it on their own, unproctored. Your Honor, this first test, Your Honor, was a computerized test that was taken on their own and proctored. So you take a screenshot and get each inquiry and get together with other people and figure out, well, what answers lead to what scores? It's not at all implausible to me that, in fact, this could be the key that unlocks the door to figure out how am I supposed to answer these questions. The problem with that assertion, Your Honor, is that the test itself was random. Some of the questions were weighted. Some weren't. Some were zero points. Some were 15 points. It was on a scale. Applicants had no way of reverse engineering that with just a raw score and their own score. More importantly, the standard for asserting exemption cases under the Privacy Act is would the release compromise the objectivity or the fairness of the process? Now, with that said, that biographical assessment is no longer in use. The FAA has stopped using that. In fact, they went from the BA to the BQ, the biographical questionnaire, and because of congressional pressure and because of the news media attention behind this, I believe a political decision was made to stop using this as a screening and assessment test. So it's really a moot point. Was that already true at the time that the request was denied? It was in – no, no. The FAA, as far as I know, they made an official public pronouncement. I don't know what went on behind the scenes. Around this time, however, we know Congress was asking them to stop using this, to not use this as a tool, and eventually legislation was passed which prevented the FAA from using this as a tool. It's in the current regulation. While the test was still in effect, it seems that your answer to Judge Clifton depends on the idea that other people weren't also requesting their scores. Do we have any information about that? We have no information. In fact, as far as I understand and know, we are the only – Mr. Rojas is the only individual that requested his score and the cutoff score. He didn't request anything past that. Basically, his rationale was, I want to know what I scored. See, the FAA never scored these tests and never told these individuals, you either got a checkmark, a green checkmark, or a red X. And Mr. Rojas wanted to know, well, if I got a X, how far off was I? And he wanted to know what the raw cutoff score was so he could understand where he may have failed. Now, with that said, this is exactly what the Privacy Act is designed to allow someone to do, obtain government records about themselves, and certainly if it doesn't affect the objectivity or fairness of the process. And we believe that the extreme measures, arguing to extremes at Mr. Canada, that if everyone got together and put their scores together, everybody filed an FOA, everybody got their scores, and somehow were able to reverse engineer the test. I believe it would be practically impossible to do that. Could it have happened? Possibly. It possibly could happen. But that's no longer a possibility since the FAA has stated publicly that they are not going to use the BA or BQ exams. In fact, there's legislation passed by Congress in 2016. Do you have a case that tells us we look at that question as of today when we're answering it, as opposed to when the rejection was made by the agency? I don't, Your Honor. The only thing I can say is circumstances had changed, and now since we're reaching the issue today of whether it should be released or not, or at least discussing the issue today, the issues put forth by the government to not release the exam have no merit because it's a moot point. So the question before us is whether the agency was wrong or erred under the Privacy Act in failing to release it. That sounds like it's a question as of the time that it made that decision. I think it's twofold, Your Honor. I think we have to look at the pragmatics and the mathematical possibilities that it would take hundreds if not thousands of students getting together, remembering if they didn't take screenshots, Your Honor, of what was on exam, and then somehow with just their own individual scores, even though the tests were randomized, and the cutoff score somehow being able to define and determine how the test was weighted. You're saying even at the time that the FAA made the decision not to release the scores, it was not logical? Their position was not logical? I think it's entirely illogical, and it's basically based upon their past practice, where in the past they would release a score, they would tell you what you got wrong, and it was based upon peer-reviewed studies showing that the test was valid. One of the issues in this exam is that it was not a valid screening test. It's a different matter, but one of the reasons Mr. Rojas wanted to find that information was basically for improvement. What did I do wrong? Before you run out of time, I'd like to ask you about the personal e-mail addresses. I know that you received the e-mails with just those personal e-mails redacted, so you've seen basically the content, and I'm struggling to understand what you think these e-mails are helpful for or how they're going to help the public understand anything such that learning who they went to is meaningful. Well, the e-mail addresses, thank you, Your Honor, the e-mail addresses that we're asking for involve correspondence between Mr. Shelton Snow, who allegedly was involved in a cheating scandal, giving the answers to the test to a select group of people, the BA test. And what we asked for, what Mr. Rojas asked for, were those e-mail addresses. As courts across the country have previously divined, if the only information you have and the only way to figure out who is part of the alleged conspiracy is through the e-mail address, it would be important to us. But so, like in the EFF case you may be referring to, there was a background principle that knowing who lobbyists were is something the public is interested in. But I don't understand from looking at these e-mails how the public is interested in who these e-mails went to. These e-mails seem fairly innocuous and not really to go to any – they don't seem very probative of anything to me. I don't understand what you're going to do with them. I mean, lobbying to change a government policy has been determined to be like a category for which we want to know the lobbyists. But these e-mails, who this one person was sending e-mails to, especially when we see them and it's not like he's sending lists of answers, I'm not sure why it matters who he was sending these e-mails to. Because there was a group of court individuals allegedly within the FAA that had control of the hiring process, that actually were the ones making the determination. Not only were they crafting the exam, but they had control of the hiring process. And if our theories are correct and if our beliefs have merit, those individuals would be important to follow up with to find out if, in fact, they were engaged in nefarious activities. But is there anything about these e-mails that looks like they're discussing nefarious activity? We haven't had an opportunity, Your Honor, to review those e-mails. They were looked at in camera. I thought you had them just with the e-mails redacted, the addresses redacted. We do. So you can see the substance, and the substance seems innocuous, doesn't it? Well, the substance seems innocuous unless you understand what allegedly occurred in this case, that people were working together to affect the fair and open opportunity for people to achieve federal employment. So there are references to meetings and presentations. There are references to one e-mail. You see the barrier analysis was being sent to various addresses. There are advertisements. There are some congratulatory e-mails. Now, how would those – what role would those play in your conspiracy theory? Well, the FAA made a representation all involved, including the 36 schools, that no one, including the NBCFA, which is an employee special interest group Mr. Snow belongs to, had prior knowledge, had seen or were briefed on the change, had been given preferential briefings as far as the briefings and the schedule of appointments. So those things are entirely relevant to the matter. Which change? Can you clarify what you mean? Oh, I'm sorry. The change of the hiring process that the FAA had in place prior, and the December 2013 wholesale change where they eliminated the list of the college students and said we're going to go to off-the-street hiring because there are better candidates. So what e-mail conveyed information that you think would relate to the topic you just discussed? Anybody who was present in the briefing to see what was discussed. It would be nice to know who was there. It would be nice to know if other FAA employees were there. What in the e-mails is going to reveal that? How is identifying who the recipient of one of the e-mails, for example, since it was mostly the two-line, I guess, that was redacted, what e-mail is going to lead to the kind of information you just discussed? When I went through the e-mails, my reaction was sort of the same. Now, there are a lot of things I don't understand. I can appreciate that. But can you give me a sample of one of these e-mails that might actually connect up to anything because all the substance seems pretty innocuous. Well, as I have about 45 seconds left, I'll answer more broadly. Yes, a lot of those e-mails deal with prior briefings about the employment change that were given to people outside of the scope that should have had knowledge in that area. The FAA made many avowals, publicly, privately, to members of Congress. So could you point us to a specific one? They're in the record right now because I have 30 seconds left. I can't tell you the e-mails. The answer appears to be no, that you can't. And I can't find one. Well, the e-mail is affecting the meetings. The meetings that the judge spoke about before, about the briefings and meetings, directly talked about the changes to the hiring process. And those individuals that were there may have information about what occurred during that meeting. We can't get elsewhere. It would be really helpful if you could point us to a specific one so we could talk to you about its contents and ask you, do you have any ER site that tells us what you're talking about? I don't have one up here in front of me, Your Honor, and I'm just having a blank. They're what was in the record. We'll give you a minute for rebuttal. Thank you. You can come back and give us the ER site. I'll do that. Okay, thank you. Thank you, Your Honor. May it please the Court, Paul Bullis from the District of Arizona. The District Court correctly granted the government's motion for summary judgment in this matter. The District Court correctly held that the FAA properly withheld the minimum passing score and Mr. Rojas' score on the biographical assessment pursuant to FOIA Exemption 2 and Exemption K-6 of the Privacy Act. The District Court properly held that the FAA correctly withheld 202 documents because they were not agency records under FOIA. And the District Court correctly held that the FAA properly redacted personal e-mail addresses pursuant to Exemption 6 of the Freedom of Information Act. This Court should affirm. So let me ask you a question about the documents that were withheld as not being agency records because I was a little troubled by the application of the tax analyst test because it seems that the FAA created or obtained the e-mails. They were created by Snow using his FAA e-mail account or obtained by him through that account. And they were in the control of the FAA because they were in the agency's possession as part of the conduct of Snow's duties. And unlike the Kissinger case, it wasn't personal documents or documents that had been created elsewhere and then just carried into the office. And so between those two cases, the Kissinger case and the tax analyst case, it does seem like those materials stored on the agency's server meet the very broad test for being agency records. So how do you distinguish that? Your Honor, I think the first thing to point out is the tax analyst case. And I realize they relied on Kissinger, but they did recognize, in fact, that there can be personal documents that are personal records that are, in fact, located at the agency. And the specific documents that were at issue here, the 202, they are described in declarations, and they indicate that approximately three-quarters were not created by Mr. Snow, but, in fact, were received by him. They say it doesn't matter who created them if you've received them, and it doesn't even matter what the intent was of the person who created them. That was part of tax analyst. And they came to his FAA address and frequently, based on my review, due to his position at the FAA. Like, can you speak as an FAA employee? So how is that? It's not purely personal. It's not the what are we having for dinner, honey, assuming that that would be exempt. Your Honor, I think the approach has been used by some of the post-tax analyst case to deal with those issues that we have cited to you. They look at the totality of the circumstances. They look at the use to which the records. You're talking about the D.C. circuit cases? Yes, Your Honor. Because those seem to be contrary to tax analyst. They say you do look at intent, for example, and tax analyst is pretty clear that you don't. Well, again, there are a couple of approaches to how they have utilized. And I think that those cases, in fact, are trying to address the very question that the very issues that tax analyst addresses, which is were they created, was the creation or obtaining those, can that be, or should that be attributable to the agency? And should control be attributable to the agency? Shouldn't it if it's coming to one of their employees on his personal, on his FAA email address and stored in the FAA servers and computers? And that seems pretty much part of FAA functions, and especially when he's sending FAA information to others, how is that nearly personal? Your Honor, I think, first of all, the FAA has provided declarations that indicate that none of those documents related to the mission of the FAA. None was used by Mr. Snow. Well, of course they're saying that because that's what the Freedom of Information Act request is for, right, to find out what the government is up to and if the agency presumably is avoiding informing the public of this. So I'm not sure how much weight to give that. I don't think there's anything in FOIA that would say we give much weight to that sort of statement. Well, Your Honor, the FOIA does address that, say that records are what need to be disclosed, and so the whole question is what are the records, and the D.C. Circuit cases we've cited to you look at such things as the use and the totality of the circumstances. I believe the declarations that are provided by the FAA address it from that standpoint directly, and the district court also, and those declarations identify what those documents are, so we know what those e-mails are. Well, let's go ahead and take the allegations that have been put on the table, and I'm not saying the allegations are correct, but if, in fact, there was something going on where efforts were being made to give help to certain applicants, it would make perfect sense for the FAA to say, well, that's not part of our mission, but that doesn't tell me that the e-mails in question might not speak to exactly what the public might be interested in in terms of what FAA employees are doing. So I'm not really persuaded that just because it wasn't part of the FAA's mission ends the question. I understand that, Your Honor, and I think what the court has in front of it, though, and can look at are the descriptions of two things. One is the descriptions of the e-mails. So the court... Well, your brief says 29 were either sent or received by Mr. Snow as a member of the National Black Coalition of Federal Aviation Employees, and one was from Mr. Snow's union. How does that tell me that there's nothing pertinent in any of those e-mails? It doesn't. Trust me, it doesn't. Yes, sir. I would add that the district court conducted an in-camera review of those documents and agreed with FAA's position and found that none of those documents was an agency record. So that's another... But that's the question we have to answer de novo now, right? It is. But that factual review has been conducted, and that's another basis for some comfort or basis from which this court... Did the FAA do an investigation of these allegations? And if so, did they issue any kind of public analysis of whether the allegations were true? There were some investigations that were conducted, and I don't know what publicly was issued in that regard. There have been investigations conducted by the FAA, yes. Was the public told anything about the results of those investigations? Your Honor, I honestly don't know the answer to that question. I know there have been FOIA requests regarding some of those investigations, but I don't know if there's been a public pronouncement about that. But I think that the... And the question was raised earlier about the e-mail addresses and whether those may be properly disclosed or whether they were properly redacted. And I think, as the Court noted, the language in Listener indicates that there is an even lower privacy interest in those. If there is a likelihood that revealing those e-mail addresses will show some type of government misconduct. What about evidence that FAA employees were conducting FAA business on their personal g-mail? How would you analyze that sort of situation? I would not... If government business is being conducted on a personal e-mail account? Exactly. Is that the question? Mm-hmm. I think that if it's government business, then I think we're certainly closer to, is it an agency record? I think it goes to the question... I think there are two questions. One is, does the government have control over that record? So, for example, if it is conducting government business on a personal g-mail account from the individual's home and that e-mail never makes its way to the agency at all? So say that someone who's an employee of the agency e-mails to his government information to a personal, his home e-mail address and sometimes responds to FAA employees from his personal e-mail. How do we analyze that? Is that something that showing the personal e-mail address would let the public know what the agency and the agency personnel are doing? Your Honor, I think that in that type of situation, the question is, what is the government doing? And the answer to that would be displayed in the e-mail itself, not in the personal e-mail address. That does not add anything to the public's understanding of what the government is up to. But if you don't really know that the person is using, a FAA employee is using a personal e-mail address, that seems to fit within the situation EFF, which says if the e-mail address is the only way to identify what's going on, then it has to be disclosed. Well, the other part of the process determined by Yonemoto is there has to be then a, there's a balancing on what is the public interest. And so the public interest, as Yonemoto says, is limited to understanding what the government is up to. For these e-mail addresses that are at issue here, we know they are e-mail addresses, personal e-mail addresses of government employees. Do we know which government employees? I confess I got confused when I was going through this case, and I'm still not sure I have a handle. Is the issue the precise e-mail address, or is the issue the identity of the person attached to that address, the identity of the recipient of an e-mail, for example? The identities are not in the record. The declarations state that the e-mail addresses are for FAA employees. But I think there's a difference between those two. I can understand a privacy argument that says an individual e-mail address is private, and there's certainly a downside to letting that out into the world. But knowing who the recipient was of an e-mail, separate and apart from what comes before the at gmail.com, that's of interest because it says this is what the government is doing with this information. And sending it to John Doe as opposed to whatever John Doe's e-mail address is seems to be a very different question. Do we know, does plaintiff know, who the recipients were by name of person as opposed to by name of e-mail address? As I said, it's not in the record, and it's not. Well, the answer to that question is no. I think the answer to that question is no, Your Honor. I think that gives you a very difficult time explaining why it is that's not something that's what the government's doing. If a government employee is sending something to John Doe, why isn't that something the public's entitled to know about? Well, because, Your Honor, I think when we balance the interest of the individual, and this Court has recognized that there is a privacy interest even for government employees in their e-mail addresses. But, see, that's what led me astray for a while, and I don't want you to go down that path. I may have a privacy interest in my, I'm old so I have a Yahoo account, in what exactly comes before at yahoo.com. But if somebody's sending things to me from the government, I don't know what the privacy interest is in me being able to deny that I received what was sent to me. So I don't think the fact that there's a privacy interest in an e-mail address should extend to obscure who it is that is attached to that e-mail address and gets what is sent by the government. And I think that that is the balance, a balancing test that the Court has to perform, and that the balance in this case tilts in favor of the privacy interest because there is no additional public interest in knowing that it was sent. Even if you can't know who received what was sent by the government? Why doesn't the public have an interest in knowing to whom things are being sent by government employees? Because you're going to have a hard time persuading me that they don't and that the privacy interest in the e-mail outweighs that, at least in the abstract. Well, I will simply say quickly in response that we know that it was being sent to government employees. These are not just, excuse me, FAA employees, not simply members of the public. So could I just ask, could the Vaughn Index have said, this is Jane Doe, we're blocking her e-mail address but list who the people were? Or is there some other way that the government could have answered what Judge Clifton is talking about, given the identities without giving their personal e-mail addresses? Yes, they could have done that. But they did not. They did not. So is there any hope that this is an issue that might be settled if we sent you to mediation? I mean, this seems solvable. I can't speak on behalf of the FAA on that issue. I don't know the answer to that question, Your Honor. So I realize I'm taking over time. We'll stick with John Doe. You say these are FAA employees. If it had been sent to John Doe at FAA, it would be subject to release. But because it's sent to JohnDoe at gmail.com, your argument is that it's not? The argument is that there's a privacy interest in that. I'm not trying to be difficult about this. I think your argument is because of it's gmail rather than FAA.gov, it can be withheld. That's correct, Your Honor. It's a private e-mail address. Okay. Thank you, Your Honor. I'll give you a minute for rebuttal. As a former air traffic controller, I know I speak fast, but I'm not so sure I can get everything in in a minute, but I'll try. Excerpt to the record, 210 and 211 are the ones I have. I believe there are others. But 210 is an example of the FAA talking about the media attention regarding the hiring process. We know that some of the people that it's listed to were very involved and allegedly part of the push to change the hiring process. However, certain e-mails are redacted. The reason this is important is we'd like to show who was involved inside the FAA. We don't have the names. In fact, on many e-mails, the FAA sends us FAA employees, and we have other e-mails where private e-mails are unredacted. It's just these select cases which actually creates more suspicion that somebody may or may not have been involved. Under the Yamamoto, the two prongs, the privacy interest in e-mail addresses has been defined by the Ninth Circuit as minor in e-mail addresses. The public interest in finding information about some individuals working for a government agency that allegedly skewed the hiring process to discriminate against people. But 210 and 211, you actually see the names of almost, I mean, you see lots of names. I mean, if you needed to talk to someone about what happened in this meeting, you've got about 10 names that you can see. So I'm still not understanding how this is going to help you to get the personal e-mail that was 1cc. If the ones that are redacted are people in the HR branch that handle the hiring and the NBCFA and Mr. Snow's made attestations that they didn't coordinate with them, they didn't speak with them, they weren't communicating with them about this issue at all, it would show that they were being untruthful and that were people inside HR. This is after the allegation was a public allegation on the news. I thought what you were asking us before to think about was what happened before the test was even adopted. Yes, as far as the briefing of the NBCFA and certain individuals. The FAA has made representations that no one was told ahead of time. Right, so how would something about when the news came out, the meeting they want to have about Fox News way later tell us anything about what happened four years earlier? All it would show is it's a breadcrumb leading to a trail of people that possibly were involved. If that's an HR name, it's highly relevant. We've been told all along by the FAA and various court proceedings that the NBCFA had no input on this, although we have documents that show that's not true. And what we're trying to figure out is how this happened and who would have known about it despite the FAA saying no one knew about it and it didn't happen. It's basically a breadcrumb trail leading us to somebody in the FAA's HR branch who's responsible for the hiring that would give us some further information. We don't even have the names. The FAA hasn't provided them. And the email, the interest in the Yanomoto case and email addresses is defined as minor. The test is the balancing test. What's the public interest in this case? It's very large if Mr. Rojas' assertions are true, if congressional insight and correspondence and communications with the FAA are absolutely true or even partially true. The public interest is huge. People were being hired that were going to be involved in public safety positions that may not have been as qualified due to discriminatory intent. So I think the public interest in that is very large. Back to the Privacy Act in Case 6. We're asking for a simple score, Mr. Rojas' score. The test is no longer used. I'm sorry, I didn't understand. Thank you very much to the panel. Thank you. The case of Jorge Alejandro Rojas versus the FAA is submitted. The next case is United States v. Jorge Acosta-Lacerio, and that's submitted on the briefs. And we're adjourned for this session.
judges: Clifton, Ikuta, Friedland